## COLLINS *v.* WILLIAMS.

### (*Nashville.*   December 19,   1896.)

1. WILL.   *Rule in Shelley's case.*

The rule in Shelley's case does not apply, and the first taker is not vested with the fee, under a devise of lands to testator's two daughters, and to the survivor of them if either should die without a child, and to be held free from the debts of their husbands if they should marry, and to descend "to their children." (*Post, pp. 527–529.*)

2. SAME.   *Same.*

The words "child" or "children" are words of purchase, not of limitation, unless controlled by other language of the will, and are not the equivalent of the terms "heirs" or "heirs of his body," as used in the statement of the rule in Shelley's case.   (*Post, pp. 527–529.*)

3. SAME.   *Language not precatory.*

The phrase, "it is my will and desire," is not merely precatory, but sufficient, when so intended, to pass and vest an estate. (*Post, p. 529.*)

4. EQUITABLE ESTOPPEL.   *Does not attach, when.*

The absolute owner of lands, who, entertaining an honest belief that he had but a life estate therein, knowingly, but without fraud, actual or constructive, permits, or even aids his children in conveying a remainder interest they are supposed to have therein, to a purchaser equally innocent and ignorant of the true state of the title, is not estopped to reclaim his title from such purchaser.   (*Post, pp. 529–533.*)

Cases cited and approved: Morris *v.* Moore, 11 Hum., 434; Askins *v.* Coe, 12 Lea, 677; Patton *v.* McClure, M. & Y., 339; 6 John's Ch., 167.

5. ESTOPPEL.   *Of guarantor of title.*

One who becomes guarantor or surety that a minor shall make title to lands, is estopped thereafter to set up title in himself

---

Collins *v.* Williams.

---

to the land, against the purchaser, though he may have acted in ignorance of his own title and in perfect good faith. (*Post, pp. 533, 534.*)

---

FROM FRANKLIN.

---

Appeal from Chancery Court of Franklin County. T. M. McConnell, Ch.

Estill & Lynch for Collins.

Banks & Embrey for Williams.

McAlister, J. This cause involves, first, the construction of a will, and presents the question whether certain devises are governed by the rule in Shelley's case; and, secondly, whether complainant is estopped by certain acts *in pais* from asserting title to other tracts of land originally owned by her and not embraced in the will. The record discloses that in the year 1845 Samuel Weeks died testate in Franklin County, and left surviving him a widow and two daughters, to whom, by the second clause of his will, he devised all his property, real and personal, share and share alike. The daughters were of very tender years at the time of the death of the testator, Lucy being seven years and the daughter Louisa only one year old. Louisa Collins married in 1861, and has eight children. Lucy never married. By the third item of his will the testator provided,

viz.: "Should my two daughters, before mentioned, arrive at the age of maturity and marry, my will and desire is that the property given to them shall not, in any instance, be liable for the debts of their husbands, but shall descend from my daughters aforesaid to their children." By the fourth item it was provided that "should either of my children before mentioned die without a child, then the property given to it shall descend to that which may be living, in the manner above specified."

It is insisted, on behalf of appellant, that Mrs. Collins is the absolute owner of the property devised in the will, to the exclusion of her children. In other words, that no remainder was created by the terms of the will in favor of the children of the devisee, but that the first taker was vested with the estate in fee under the rule established in Shelley's case, which was in force in this State at the date of the execution of this will in 1845. This rule, once characterized by Judge Reese as a Gothic column found among the remains of feudality, was abrogated by the Act of 1852. This was subsequent to the death of the testator, and it may be conceded that if the rule is applicable, it is the law of this case. That rule was, that "whenever any person, by any gift or conveyance, takes an estate of freehold, and, in the same gift or conveyance, an estate is afterwards limited, by way of remainder, to his heirs or the heirs of his body, the word heirs are words of limitation of the estate

carrying the inheritance to the ancestor, and not words of purchase creating contingent remainders in the heirs." It is argued by counsel for appellant that this devise falls within the rule in Shelley's case. It will be observed, however, the words used in this will are child and children, and not heir or heirs of his body. It has been uniformly held in this State that the word child or children is properly a word of purchase, and not of limitation, unless, from the context of the will, it is made to appear that they were intended as words of limitation. There is nothing in the language of this will indicating that a different signification was attached to the word child or children than its ordinary legal meaning. The technical and legal meaning of the word child or children is the immediate offspring, and not an indefinite line of heirs. The fourth clause of the will illustrates the intention of the testator that a particular class was in his mind when he made this devise. As already stated, in the first clause of the will, the testator devised this land to his wife and two daughters absolutely and without limitation, share and share alike. By the second clause he provided that, if his daughters should arrive at maturity and marry, "my will and desire is that the property given to them shall not, in any instance, be liable for the debts of their husbands, but shall descend from my daughters aforesaid to their children." The next clause clearly shows that the testator had in his mind the imme-

diate offsprings of his daughters, and not an indefi-
nite succession.    That clause provides that, "should
either of my children before mentioned die without
a child, then the property given to it shall descend
to that [daughter] who may be living, in the
manner above specified." So that we think it clear
this devise does not fall within the rule in Shelley's
case.    Nor can we agree, as insisted by counsel,
that the words, "it is my will and desire," em-
ployed in the third clause, are merely precatory
words indicating a desire or recommendation, and
not as creating a remainder in the children of the
devisee.

The next question presented is in respect of the
estoppel pleaded against complainant from asserting
her title to the lands.    This estoppel arises in the
following manner: The Court of Chancery Appeals
found that complainant, Mrs. Collins, had the abso-
lute title to the twenty acre tract, and also to the
one hundred and sixteen acre tract, which she de-
rived from the Chancery Court.    She stood by and
allowed six of her children to convey a remainder
interest in these lands, when they had no such in-
terest, and actively aided in perfecting the final
consummation of the trades in the execution of the
deeds of conveyance to these defendants.

The Court further found as a fact, that when
Mrs. Margaret Smith, a married daughter of com-
plainant, executed her conveyance she was a minor,
and that her mother, the present complainant, came

14 P—34

to Winchester with her said daughter and husband, where the deed was drawn, signed, and acknowledged in her presence. It is insisted now by appellant, that, in view of all these acts, Mrs. Collins, the present complainant, is estopped to assert title to any of the lands she allowed her children to convey.

Mrs. Collins, at the time these several conveyances were made by her children, was not laboring under the disability of coverture but was a *feme sole*.

The Court of Chancery Appeals further found as a fact, that all the parties to these conveyances acted on the belief that Mrs. Collins had only a life estate in the lands, and that her children owned the remainder interest, which they had a right to sell. The Court of Chancery Appeals further found that Mrs. Collins was ignorant of the fact that she owned the fee in these lands, and was under the impression that she only owned a life estate.

"The general rule," says Mr. Pomeroy, "is, that if a person interested in an estate knowingly misleads another into dealing with the estate as if he were not interested, he will be postponed to the party misled, and compelled to make his representations specifically good. It applies to one who denies his own title or incumbrance, when inquired of by another who is about to purchase the land or to loan money upon its security; to one who knowingly suffers another to expend money in improvements, without giving notice of his own claim, and the like.

This equity, being merely an instance of fraud, requires intentional deceit, or, at least, that gross negligence which is evidence of an intent to deceive. In the language of a most recent decision, to preclude the owner of land from asserting his legal title or interest under such circumstances, ' there must be shown either actual fraud, or fault or negligence equivalent to fraud on his part in concealing his title; or that he was silent when the circumstances would impel an honest man to speak; or such actual intervention on his part, as in *Stowe* v. *Barker*, 6 Johns. Ch., 166, so as to render it just that, as between him and the party acting upon his suggestion, he should bear the loss.' What is the reason of this rule? It is accurately explained in the same decision. While the owner of land may by his acts *in pais* preclude himself from asserting his legal title, ' it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity.' It is opposed, says the author, to the letter of the statute of frauds, and it would greatly tend to the uncertainty of titles if they were allowed to be affected by parol evidence of light or doubtful character. The most important ground of justice and equity admitted by Courts of Equity to uplift and displace the statute of frauds concerning legal titles to land, by fastening a liability upon the wrong-doer, is fraud. There are many instances in which equity thus compels the owner of land to forego the

benefits of his legal title, and to admit the equitable claims of another, in direct contravention of the literal requirements of the statute; but they all depend upon the same principle." Pomeroy's Eq. Jur., Vol. II., Sec. 807; Bispham's Equity, Sec. 399.

In the case of *Morris* v. *Moore*, 11 Hum., 434, this Court quoted with approval the language of the Court in *Stowe* v. *Barker*, 6 Johns. Ch., 167, cited by Mr. Pomeroy, as follows, viz.: "Where one having title acquiesces knowingly and freely in the disposition of his property for a valuable consideration by a person pretending to title, and having color of title, he shall be bound by that disposition of the property, and especially if he encouraged the parties to deal with each other in such sale and purchase. It is deemed an act of fraud for a party, cognizant all the time of his own right, to suffer another party, ignorant of that right, to go on under that ignorance and purchase the property or expend money in making improvements upon it."

The Court of Chancery Appeals do not find any fraudulent conduct or intentional deceit on the part of Mrs. Collins, nor do they find any such negligence on her part as amounts to constructive fraud. On the contrary, that Court finds that all the parties acted in good faith and under the misapprehension that Mrs. Collins only owned a life estate in these lands. Upon this finding of facts, which is conclusive upon us that Mrs. Collins was ignorant of the true state of her title, and was guilty of no

fraud, we agree with the Court of Chancery Appeals that no equitable estoppel can be predicated. Said this Court in *Morris* v. *Moore*, 11 Hum., already cited: "To justify the application of the rule of equitable . estoppel, it is material that the party should be fully apprised of his rights, and should by his conduct or gross negligence encourage or influence the purchase, for if he is wholly ignorant of his rights or the purchaser knows them, or if his acts or silence or negligence do not mislead or in any manner affect the transaction, there can be no just inference of actual or constructive fraud." *Askins and wife* v. *Coe*, 12 Lea, 677; Pomeroy's Equity Juris., Vol. II., Sec. 807. So it was held in *Patton* v. *McClure*, M. & Y., 339, "that if one knowingly, though he does it passively by looking on, suffer another to purchase and expend money upon land under an erroneous opinion of title, without making his claim known, he shall not afterwards be permitted to exercise his legal rights against such person."

We are of opinion, however, that in respect of two of the interests conveyed, Mrs. Collins is estopped. The Court of Chancery Appeals found that when B. W. Collins and Mrs. Margaret Smith, son and daughter of Mrs. Eliza Collins, conveyed their interests, they were minors, and that Mrs. Collins became surety on their bonds executed to the purchasers and conditioned for the acknowledgment and ratification of their respective deeds when they should

arrive at age. Mrs. Collins has thus absolutely guaranteed the title of her two children to the interests conveyed by them with almost as much solemnity as the execution of a deed to the land directly to the purchasers. She is bound to make good that guaranty regardless of her knowledge or ignorance of the true state of her own title.

The decree of the Court of Chancery Appeals is modified to the extent of these two interests, and in respect of them we hold that Mrs. Collins is estopped to assert any title. In all other respects the decree of the Court of Chancery Appeals is affirmed.