Smith v. Cross.

## J. T. SMITH *et al. v.* C. CROSS *et al.*

## (*Knoxville.*   September Term, 1911.)

1. **STATUTES OF LIMITATIONS.**   Deed fraudulent and void as against minors may be an assurance of title under adverse possession.

  Although a deed of conveyance of land is fraudulent and void as against the minor owners, yet, if it purports on its face to convey an estate in fee, it is an assurance of title, so that the statutes of limitations will run in favor of the adverse possessor holding under said deed, and will perfect his title after the requisite period of adverse possession. (*Post, pp.* 167-170.)

  Cases cited and approved:   Gray v. Darby, M. & Y., 396; Love v. Shields, 3 Yerg., 408; Vance v. Johnson, 10 Humph., 214; Blantire v. Whitaker, 11 Humph., 313, 317, 318; Clark v. Chase, 5 Sneed, 636; Hunter v. O'Neal, 4 Bax., 494; Thurston v. University, 4 Lea, 513 (and citations); Nelson v. Trigg, 4 Lea, 701 (and citations); Ramsey v. Quillen, 5 Lea, 184; McBee v. Bearden, 7 Lea, 731; Goodloe v. Pope, 3 Shannon's Cases, 634; Hubbard v. Godfrey, 100 Tenn., 150; Boro v. Hidell, 122 Tenn., 80, 99.

Case cited as overruled:   Waterhouse v. Martin, Peck, 392, 409.

2. **SAME.**   Husband jointly occupying wife's land with her cannot assert adverse claim under adverse possession.

  The wife's possession of land, held jointly with her husband, under an assurance of title conveying to her an estate in fee therein, presumptively inures to her benefit under the statutes of limitations, though the husband receives a grant from the State covering the same land which conveyed nothing because the State had previously granted the land; for the law will not permit the husband, while living with his wife and in joint possession of her land, or occupying her land with her, to assert an adverse claim to the land under adverse possession. (*Post, pp.* 170-172.)

Constitution cited:    Sched. 4 to const. of 1870.

Cases cited and approved:    Fancher v. De Montegre, 1 Head, 40,
41; Ramsey v. Quillen, 5 Lea, 184, 192; Templeton v. Twitty,
88 Tenn., 595; Woodruff v. Roysden, 105. Tenn., 491.

3. **SAME.    Same.    Presumption that the possession is with the
legal title.**
The legal presumption is that the possession of land is in the
person having the legal title.    (*Post, p.* 171.)

Cases cited and approved:    Foster v. Jordan, 2 Swan, 476, 480,
481; Welcker v. Staples, 88 Tenn., 49, 51; McLemore v. Duri-
vage, 92 Tenn., 482, 492.

4. **SAME.    Same.    Same.    Wife's land so acquired by adverse
possession descends to heirs, subject to husband's curtesy.**
Where husband and wife jointly hold the adverse possession of
land under her assurance of title for more than seven successive
years, the title becomes vested in her under the statute of
limitation (section 4456 of Shannon's Code); and upon her
death descends to her heirs at law, subject to the husband's
tenancy by the curtesy.    (*Post, p.* 172.)

Code cited and construed:    Sec. 4456 (S.); sec. 3459 (M. & V.);
sec. 2763 (T. & S. and 1858).

Case cited and approved:    Templeton v. Twitty, 88 Tenn., 595.

5. **SAME.    Same.    Same.    Same.    Tenant by curtesy or his
grantees cannot acquire title adverse to remaindermen by
adverse possession.**
Since a tenant by the curtesy is at least a quasi trustee for
the remaindermen, and holds possession for the protection of
the fee as well as of his own estate, he cannot impair the
remaindermen's interest by acquiring title adverse to them;
and, therefore, neither he nor his grantees can acquire the fee
in the land by adverse possession as against the remaindermen,
because they have no right to possession, or to bring suit there-
for until the falling in of the life estate.    (*Post, pp.* 172, 173.)

Smith v. Cross.

Cases cited and approved:  King v. Sharp, 6 Humph., 55; Vaden
v. Vaden, 1 Head, 445; Carver v. Maxwell, 110 Tenn., 75, 83.

6.  SAME.  State's second grant can only serve as an assurance
of title to be made effective by adverse possession.

The State's grant is of no force to transmit title to land where
the State had previously granted the same and has no interest
left which it can grant or convey, and its second grant can
only serve as an assurance of title to be made effective by seven
years' adverse possession thereunder.  (*Post, pp.* 170, 171, 173,
174.)

7.  SAME.  Adverse possession, to be effective in perfecting title,
must be held under a registered assurance of title.

One does not acquire title to land by adverse possession under
the State's second grant not registered in the county in which
the land lies, because under our statute (Acts 1895, ch. 38),
the adverse possession must be held for seven years under a
registered assurance of title.  (*Post, pp.* 173, 174.)

Acts cited and construed:  Acts 1895, ch. 38.

8.  SAME.  Same.  Erroneous registration of grant or deed was
immaterial prior to statute requiring registration to make
adverse possession effective to perfect title.

Prior to the statute (Acts 1895, ch. 38), requiring the adverse
possession to be held for seven years under a registered as-
surance of title, as a prerequisite to the acquisition of title by
seven years' adverse possession thereunder, the registration was
not necessary to perfect title by adverse possession under the
assurance of title; and, therefore, it was immaterial that the
assurance of title was erroneously registered.  (*Post, pp.* 173,
174.)

Acts cited and construed:  Acts 1895, ch. 38.

Case cited and approved:  Stewart v. Harris, 2 Swan, 656; McBee
v. Bearden, 7 Lea, 731, 733.

125 Tenn.—11

9. REGISTRATION. Erroneous in description is immaterial, if sufficient description is registered to identify the land.

A deed as registered is sufficient, though it. is erroneously transcribed so as to cause confusion in the boundaries, where the registration contains the description as the land on which Josiah Terry lived, if the place is prominently located, on a public road, and well known. (*Post, pp.* 174, 175.)

Dougherty v. Chestnutt, 86 Tenn., 1; Staub v. Hampton, 117 Tenn., 706, 727.

10. SAME. Purpose of registration, aside from adverse possession, is to give notice and to prevent appropriation by grantor's creditors.

The purpose of registration, aside from that required to make adverse possession effective in perfecting title, is but to give notice to subsequent innocent claimants under the maker of the deed, and to protect the land against appropriation by his creditors. (*Post, p.* 175.)

Code cited and construed: Sec. 3752 (S.); sec. 2890 (M. & V.); sec. 2075 (T. & S. and 1858).

11. SAME. Has no bearing or relation to conflicting titles except as necessary to make deeds evidence.

Registration has no bearing upon, and is unrelated to, a title claimed under another and altogether different line or source, save when the two come into conflict, and the question is whether a particular deed can be introduced in evidence by a plaintiff in ejectment, where objection is made thereto for want of registration. (*Post, pp.* 175, 176.)

Case cited and approved: Wilkins v. McCorkle, 112 Tenn., 688, 699-702.

Cases cited and distinguished: Napier v. Elam, 6 Yerg., 108; Ingram v. Morgan, 4 Humph., 66; Topp v. White, 12 Heisk., 165; Frizzell v. Rundle, 88 Tenn., 396, 398, 399; Embry v. Galbreath, 110 Tenn., 297.

Smith v. Cross.

12. **ESTOPPEL.   Must be pleaded and proved.**

Estoppel by conduct, to be available, must be pleaded and proved. (*Post*, *p.* 176.)

13. **SAME.   Same.   Party relying on estoppel must show that he was misled.**

The party relying upon estoppel by conduct of the other party must show that he was misled thereby. (*Post*, *p.* 176.)

14. **SAME.   None to assert rights by prior failure to do so without knowledge or culpable negligence in acquiring knowledge of them.**

One cannot be estopped from asserting his rights because he failed to assert them at some prior time when he had no knowledge of them, unless his failure seasonably to acquire such knowledge was the result of culpable negligence. (*Post*, *pp.* 176, 177.)

Cases cited and approved:   Morris v. Moore, 11 Humph., 433; Moore v. Johnson, 7 Lea, 580, 583; Taylor v. Railroad, 86 Tenn., 228; Collins v. Williams, 98 Tenn., 525; Crabtree v. Bank, 108 Tenn., 483; Parkey v. Ramsey, 111 Tenn., 302, 307.

15. **SAME.   Defense is ineffective where facts are too indefinite.**

The defense of estoppel will not be effective where the facts are too indefinite to permit the defendants to base a solid defense on, as where the defense of estoppel is based upon the alleged fact that the complainants received from their father all of the purchase money obtained by him from the sale of their land inherited from their mother, and the proof failed to show how much of such money was derived from said lands. (*Post*, *p.* 177.)

16. **INNOCENT PURCHASER.   Not as against a prior State grant.**

Every one who buys land takes the risk of a grant prior to that on which his title rests; but such grants are public records, and there need never be any real risk if the search for prior grants is prosecuted with thoroughness; and for failure to make such

exhaustive search, no one can complain and successfully defend under the doctrine of innocent purchaser. *(Post, p.* 178.)

Case cited and approved:    Craig v. Leiper, 2 Yerg., 193, 196, 197.

17. **REGISTRATION.** Unregistered but proven deed is good between the parties and may be used in support of a defensive right, but not in support of an offensive right, when.

A deed is good between the parties without acknowledgment or registration, and if it be proved *aliunde,* it may be used as an estoppel against the maker; and prior to the statute (Acts 1895, ch. 38), requiring assurances of title to be registered, to be effective in perfecting title under adverse possession, such unregistered but proven deeds could be used to support or defend an action of ejectment, and since said statute may still be used to support a defensive right under the second section of Acts 1819, ch. 28 (section 4458 of Shannon's Code), but not under the first section (sections 4456 and 4457 of Shannon's Code). *(Post, pp.* 178, 179.)

Acts cited and construed:    Acts 1819, ch. 28, secs. 1 and 2; Acts 1895, ch. 38.

Cases cited and approved:    Stewart v. Harris, 2 Swan, 656; McBee v. Bearden, 7 Lea, 731, 733; Kittel v. Steger, 121 Tenn., 400.

18. **MARRIED WOMEN.** Can only convey her lands by deed with privy examination, and not by title bond.

It is well established in this State that a married woman can only convey her lands by deed with privy examination, and cannot convey by her title bond, nor is she estopped by her title bond without refunding the purchase money, except perhaps where it was paid into her own hands. *(Post, pp.* 179, 180.)

Case cited and approved:    Bradshaw v. Van Valkenburg, 97 Tenn., 316, 323.

Smith v. Cross.

19. **EJECTMENT.**   **In chancery on condition that purchase money received be charged on the land, when.**

The money paid by defendant in purchasing, at judicial sale, the land sought to be recovered in ejectment, and which was distributed among the complainants as if they inherited the land from their father, whereas they inherited it from their mother, together with the interest thereon, was properly charged on the land as a condition to their recovery of the same in ejectment in chancery as the heirs of their mother.   (*Post, p.* 180.)

20. **SAME.**   **Mesne profits to be set off by permanent improvements and taxes paid.**

The mesne profits should be set off in ejectment by such amount as the improvements permanently enhanced the value of the land, and by the amount of the taxes paid by the defendant. (*Post, pp.* 180, 181.)

---

FROM SCOTT.

---

Appeal from the Chancery Court of Scott County.— HUGH G. KYLE, Chancellor.

WILL D. WRIGHT, J. W. SCOTT, and W. C. SMITH, for complainants.

E. G. FOSTER, D. C. YOUNG, and R. JONES, for defendants.

Mr. Justice Neil delivered the opinion of the Court.

This was an ejectment bill filed in the chancery court of Scott county to recover about 250 acres of land. There are numerous defendants who claim through intermediate conveyances from one Richard Smith, the father of the complainants. The latter claim through their mother. The chancellor rendered his decree in favor of the complainants as to some of the defendants, and denied relief as to others; the difference in results as to the respective parties depending upon facts peculiar to the several conveyances. The complainants did not appear from any portion of the decree adverse to them except that part which fixed the beginning corner, and the western boundary line of the 250-acre tract 27 poles and 15 links further eastward than they contended the location should be. Upon this latter subject the complainants appealed and assigned error. All the defendants against whom adverse decrees were rendered appealed and assignd errors.

There are certain questions which affect the rights of all of the complainants and defendants respectively, outside of the boundary question above mentioned. This latter we shall lay wholly out of view until we dispose of the main controversy.

The general questions above referred to relate to the following facts:

On the 20th day of May, 1836, Josiah Terry procured a grant from the State for the 250 acres in controversy. On the 11th day of September, 1860, he conveyed the

land to Harmon Terry, Miles Terry, Jasper Terry, and Elizabeth Terry, the children of his son Martin Terry. The nominal consideration expressed in this deed was $500; but it appears that the real consideration was the support and maintenance of Josiah Terry and his wife during the rest of their lives. After a time Martin Terry grew tired of the bargain and desired to remove to some land he owned in a portion of Scott county, called "The Wilderness," a few miles distant from the 250 acres. In order that he might be relieved of the burden, he induced his sister, Rachel Smith, the wife of the above-mentioned Richard Smith, to undertake the care of his father and mother, and, as part of the agreement, to take title to the land. This was agreed to. A deed was made purporting to convey the land to Rachel Smith, and signed by Josiah Terry, Martin Terry, and the children to whom it had been conveyed by Josiah Terry, although the latter were minors. This deed purported to convey an estate in fee. This was in 1862. Rachel Smith and her husband entered upon the land and held possession of it from 162 to 1891, when Rachel died. Richard Smith continued in possession of the land until his death in 1902. During the lifetime of Richard and Rachel Smith they conveyed parts of the tract, and there is no controversy as to these. After the death of Rachel Smith, her surviving husband, Richard Smith, conveyed the residue of the land to various persons, some of whom still hold the land so conveyed. Other vendees conveyed to other parties still, and these to others. The present holders are the defendants herein.

The complainants do not insist that the deed which Rachel Smith, obtained, as above stated, conveyed to her any title, but claim that it was good as an assurance of title. It is the theory of complainants that when Rachel Smith and her husband remained upon this land adversely for more than seven years, indeed about eighteen years prior to her death, she acquired title, and that when she died her husband was tenant by the curtesy, and that his subsequent sales were good for his lifetime; that they could not sue his vendees until after his death; that the present suit was brought within seven years after that time; and that therefore no statute of limitations has run against them. Most of the complainants likewise are married women, and were such at and before their mother's death and have so remained since, and they claim that in no event could the statute run against them. There were nine of the children, but only seven of them sued, and the chancellor gave relief only as to a seven-ninths undivided interest.

The general defenses offered as to the whole case may be thus stated:

1. It is insisted that the deed from Josiah Terry and others was not good as an assurance of title because in the body of the deed Martin Terry, the father of four of the vendors, purported to act as their agent when the evidence shows that, although the fact did not appear on the face of the deed, they were minors and could constitute no one their agent for such purpose; also, that the deed purports to have been signed and acknowledged by the children in person, when the evidence, now offered,

Smith v. Cross.

shows that neither of them could read or write, and they were so young they could not have intelligently acknowledged the instrument. From these facts it is argued that the deed was fraudulent as to the minors, and so known to Rachel Smith at the time of its execution, and therefore the statute of limitations could not run in her favor or in favor of her heirs at law, citing *Waterhouse* v. *Martin,* Peck, 392, 409. Although the facts are as above indicated, and the deed was void as to the minors, yet it purported on its face to convey an estate in fee, and was an assurance of title. Therefore, the satute would run, since the law is that if the instrument purports to convey an estate in fee, and adverse possession be taken and held thereunder, the statute of limitations will run in favor of such possession, even though the deed be in fact void. *Vance* v. *Johnson,* 10 Humph, 214; *Clark* v. *Chase,* 5 Sneed, 636; *Thurston* v. *University,* 4 Lea, 513, and cases cited; *Nelson* v. *Trigg,* 4 Lea, 701, and cases cited; *Hubbard* v. *Godfrey,* 100 Tenn., 150, 57 S. W., 81. This is true even though the deed be forged. *Clark* v. *Chase,* supra. The case of *Waterhouse* v. *Martin* has been overruled, on the point referred to, by subsequent cases. *Love* v. *Shields,* 3 Yerg., 408 (involving a void tax deed, known to be void by the conveyee at the time he took it); *Goodloe* v. *Pope,* 3 Shan. Cas., 634 (a champertous deed); *Gray* v. *Darby,* Mart. & Y., 396; *Blantire* v. *Whitaker,* 11 Humph., 313, 317, 318; *Clark* v. *Chase,* supra; *Hunter* v. *O'Neal,* 4 Baxt., 494; *Ramsey* v. *Quillen,* 5 Lea, 184; *McBee* v. *Bearden,* 7 Lea, 731; *Boro* v. *Hidell,* 122 Tenn., 80, 99, 120 S. W.,

961, 135 Am. St. Rep., 857—all involving cases of fraudulent conveyances. In *Love* v. *Shields,* the case of *Waterhouse* v. *Martin* was referred to by book and page, although the style was not given. The rule stated in *Love* v. *Shields, Clark* v. *Chase,* and other cases is that the statute made no such exception, and the court should not and could not make it. What has been stated upon the law point is sufficient; but we add that we do not believe Rachel Smith was consciously guilty of any fraud. We are convinced that she and the family, including her father, brother, and husband believed they were making a lawful substitution of Rachel for her brother Martin in the care of the old people, and that by the deed she was but receiving reasonable compensation for the anticipated service. The purpose of the adults was to effect a rescission of the former deed and the substitution of a new party to the contract, the sister for the brother. They dealt with the rights of the minors, it is true, in a manner unwarranted by law, and the latter could have recovered the land if they had sued in time. The youngest is now, however, more than fifty years old, and the statute of limitations has long since run as to them.

2. In order to state the next defense it is necessary to recite a fact not previously mentioned. On the 17th day of June, 1867, Richard Smith procured from the State a grant for 600 acres of land which the defendants claim entirely covers the 250 acres. They insist that from the date of that grant the possession of Richard Smith was for himself, and not in right of his wife; also, that under

the constitution of 1870, Sched. 4, the running of the stat-
ute was suspended from May 6, 1861, to January 1, 1867,
and this time could not be counted; that, leaving out this
period, there was only that from January 1, 1867, to
June 16, 1867, for the statute to run in favor of Rachel
Smith; and that on the latter date it began to run in
favor of Richard Smith under his 600-acre grant.
Hence there was only six months and sixteen days of ad-
verse possession in favor of Rachel Smith. Conceding
that the statute did not begin to operate until January
1, 1867, although Rachel and Richard Smith went into
possession in 1862, its running would not be stopped by
Richard Smith's procurement of the grant of June 16,
1867, in his own name. When the title, or assurance of
title, is in the wife, the joint possession of the husband
and wife inures to the benefit of the wife. *Templeton* v.
*Twitty,* 88 Tenn., 595, 14 S. W., 435; *Woodruff* v. *Roys-
den,* 105 Tenn., 491, 58 S. W., 1066, 80 Am. St. Rep.,
905.

The legal presumption is that the possession is with
the legal title. *Welcker* v. *Staples,* 88 Tenn., 49, 51, 12
S. W., 340, 17 Am. St. Rep., 869; *McLemore* v. *Durivage,*
92 Tenn., 482, 492, 22 S. W., 207; *Foster* v. *Jordan,* 2
Swan, 476, 480, 481. It can make no difference that the
husband is the head of the family, claims the property
as his own, and apparently controls it as such; if the
wife reside with him, and the title is in her, the law ad-
judges the possession to be hers. *Fancher* v. *De Monte-
gre,* 1 Head, 40, 41. The husband could not change this
*status* by procuring, pending such joint occupation, a

conveyance to himself, since the wife is not bound to choose between her husband and her land. *Ramsey* v. *Quillen,* 5 Lea, 184, 192. At the time Richard Smith received the 600-acre grant from the State, the latter had no title to so much as covered the 250 acres, having previously granted that to Josiah Terry; therefore the only possible effect of that action, so far as concerned the 250 acres, if it had any effect at all, would have been an endeavor to place himself in the position of claiming adversely to his wife while occupying the land with her, and while she was living in the house with him as his wife. This would have been absurd. The law would not tolerate such a *status;* certainly would not presume its existence. The husband cannot so rid himself of the presumption of law in favor of the wife's possession when with her he enters upon land conveyed to her. That presumption remains so long as they occupy the land as husband and wife, and the conveyance to her remains unchanged.

Therefore, the husband and wife having remained upon the land for more than seven successive years from January 1, 1867, indeed until her death February 2, 1891, the title became vested in her under the statute of limitations (Sh. Code, section 4456) ; and upon her death descended to her children, or descendents of such, as her heirs at law, subject, however, to her husband's tenancy by the curtesy. *Templeton* v. *Twitty,* supra.

3. But it is next said that by Richard Smith's occupancy of the land subsequent to his wife's death, and the occupancy of those claiming under him, and to whom he

sold, for more than seven years, the heirs of the wife were divested of the title; that is, that such occupancy was adverse, and under the 600-acre grant, from the death of the wife. There is nothing to show that Richard Smith assumed this adverse relation to his children, immediately upon the death of his wife. His legal relation was that of tenant by the curtesy—that is, a life tenant —and hence a trustee, or *quasi* trustee at least, for the remaindermen. *Vaden* v. *Vaden,* 1 Head, 445; *King* v. *Sharp,* 6 Humph., 55 He could do nothing to impair the remainderman's interest, as by acquiring a title adverse to that interest. 16 Cyc. (Tit. Estates), 617. If he could not effect such acquision by direct purchase, it is certain he could not do so by adverse possession. Indeed, the possession of the life tenant is not adverse but in harmony with the rights of the remainderman, since the latter do not ripen into a right of possession until the falling in of the life estate; meantime the life tenant holds for the protection of the fee as well as of his own estate. We conclude therefore that Richard Smith conveyed to his vendees or donees, as the case may be, only his life estate, which he of course had the right to do, and that the possession of his conveyees could not be adverse to the heirs of Rachel Smith, his wife, during the pendency of the life estate, since they had no right to possession, or to bring suit therefor until the falling in of the life estate. *Carver* v. *Maxwell,* 110 Tenn., 75, 83, 71 S. W., 752.

In addition to the foregoing, it is clear no title could, in any event, have been acquired by Richard Smith

through adverse possession under his 600-acre grant, because the grant was not registered in Scott county pursuant to chapter 38, Acts of 1895; his assumed adverse possession not beginning until the death of his wife, February 2, 1891, therefore not having attained to the statutory requirement of seven years, prior to the time the act was passed. The grant itself was of no force to transmit title to the land in controversy because the State had previously granted the same land to Josiah Terry and had no interest left which it could grant or convey. Its new grant thereafter could only serve as an assurance of title, to be made effective by seven years' adverse possession thereunder, as the deed of any private person, and like such deed required to be registered in the county where the land lay. This is in accordance with the very terms of the Acts of 1895, ch. 38. This act declared that no title should be vested by virtue of adverse possession unless the "conveyance, devise, *grant*, or other assurance of title" under which such possession was claimed, should have been registered for the full term of seven years in the county.

4. The point is made that Rachel Smith acquired no title by adverse possession under the deed made to her by Josiah Terry, Martin Terry, and the children of the latter on the 14th day of April, 1862, because that deed, as registered in 1865, owing to the confusion of boundaries, in transcribing the deed upon the books of the county register, purported, so far as the calls were concerned, to convey only one small corner of the land really covered by the original. But prior to the act of 1895

above referred to registration of an assurance of title
was not required as a prerequisite to the acquisition of
title by seven years' adverse possession thereunder.
*Stewart* v. *Harris;* 2 Swan, 656; *HcBee* v. *Bearden,* 7
Lea, 731, 733. Rachel Smith's title was perfected by
seven year's adverse possession long prior to 1895. How-
ever, the deed, even as registered, also described the
land as that on which Josiah Terry lived. This would
have been sufficient, because the place was prominently
located, on a public road, and well known. *Dougherty*
v. *Chestnutt,* 86 Tenn., 1, 5 S. W., 444; *Staub* v. *Hamp-
ton,* 117 Tenn., 706, 726, 101 S. W., 776. But, aside
from all of the forgoing considerations, it is only neces-
sary to say that the purpose of registration, aside from
the act of 1895, supra, is but to give notice to subsequent
innocent claimants under the maker of the deed, and to
protect the land against appropriation by his creditors.
Shan. Code, section 3752. It has no bearing upon, and is
unrelated to, a title claimed under another and alto-
gether different line or source, save when the two come
into conflict, and the question is whether a particular
deed can be introduced in evidence by a plaintiff in eject-
ment; objection being made thereto for want of regis-
tration. See the cases upon this subject referred to and
discussed in *Wilkins* v. *McCorkle,* 112 Tenn., 688, 699-
702, 80 S. W., 834. Of course, what has just been said
has no bearing upon controversies such as were the
subject of the opinions in *Topp* v. *White,* 12 Heisk., 165;
*Napier* v. *Elam,* 6 Yerg., 108; *Ingram* v. *Morgan,* 4
Humph., 66, 40 Am. Dec., 626; *Frizzell* v. *Rundle & Co.,*

Smith v. Cross.

88 Tenn., 396, 398, 399, 12 S. W., 918, 17 Am. St. Rep., 908; and *Embry* v. *Galbreath*, 110 Tenn., 297, 75 S. W., 1016.

5. It is urged that the heirs of Rachel Smith are estopped by her conduct in permitting her husband to use the land as his own. No such estoppel is pleaded in the answers, and there is no evidence that the defendants, or any one under whom they claim, were misled by any act done by Richard Smith during his wife's life. So there is neither pleading nor evidence on which to base the point. In deed, all of the conveyances under which defendants claim were made after the death of his wife.

6. It is insisted that the complainants are estopped because they stood by for years and saw the defendants expend money in improvements on the lands without making known or bringing forward their claims. Complainants meet this fully by showing that they had no knowledge of their mother's title until about one year before the present suit was brought, and only discovered it then by looking through the old papers of their father's estate which had since their father's death been chiefly in the hands of his son, defendant E. W. Smith, and after the latter had removed to a distant State. One cannot be estopped from a present assertion of his rights because he failed to assert them at some prior time when he had no knowledge of them, unless his failure to seasonably acquire such knowledge was the result of culpable negligence. *Morris* v. *Moore*, 11 Humph., 433; *Moore* v. *Johnson*, 7 Lea, 580, 583; *Taylor* v. *Nashville, etc., R. Co.*, 86 Tenn., 228, 6 S. W., 393; *Collins* v. *Wil-*

Smith v. Cross.

*liams,* 98 Tenn., 525, 41 S. W., 1056; *Crabtree* v. *Bank,* 108 Tenn., 483, 67 S. W., 797; *Parkey* v. *Ramsey,* 111 Tenn., 302, 307, 76 S. W., 812; 2 Pom. Eq. Jur. section 807; Bigelow on Estoppel, 480.

7. The defendants base an estoppel on the alleged fact that the complainants received from their father all of the purchase money which he obtained from the sale of the lands after the death of their mother. It is in proof that soon after the death of Rachel Smith he divided among her children $500, which he said was their mother's money; but the record does not show from what source she obtained it, nor, otherwise than by his own statement, how he came by it. Some years afterwards he divided about $2,000 among his children. It may be inferred from Richard Smith's frugal habits that some of this fund consisted of money he had received from sales of the land; but the record is indefinite as to how much he received from that source, and how much from other sources, consisting of other lands he dealt in, and, as to so much as may have come from the land in question here, there is no means of telling how much should be credited to his life estate, and how much to the fee in the land. In short, the facts are too indefinite to permit the defendants to base a solid defense on.

8. The defendants finally say they are innocent purchasers, and for that reason should not be disturbed. The defense is not applicable to a controversy of the kind before us. Here we have no secret equities which the complainants are endeavoring to assert against the legal

title, nor any fraud or oppression the effects of which they are seeking to escape, but only a contest for superiority between two conflicting chains of title, each of which must eventually rest upon a grant from this State. Every one who buys land takes the risk of a grant prior to that on which his title rests. But grants are public records, and there need never be any real risk if the search for prior grants is prosecuted with thoroughness. On failure to make such exhaustive search, no one can complain and successfully defend under the dectrine of innocent purchaser. *Craig* v. *Leiper*, 2 Yerg., 193, 196, 197, 24 Am. Dec., 479.

9. A deed was offered in the court below purporting to have been made by one of the complainants, Savannah Litton, to Mary S. Burchfield for three acres of the land. This deed was objected to because the certificate thereto was void. It was undoubtedly void, and there was no error in this action of the chancellor. It is urged, however, that the deed was good between Mrs. Litten (a widow) and Mrs. Burchfield without acknowledgment or registration. Such deeds are good between the parties, and as to them may be proven, even though no certificate of acknowledgment is attached thereto, and might be used to support or defend an action of ejectment (*Stewart* v. *Harris*, 2 Swan, 656; *McBee* v. *Bearden*, 7 Lea, 731, 733), prior to Acts of 1895, ch. 38, and may still be used to support a defensive right under the second section of the Acts of 1819, ch. 28, but not under the first section (*Kittel* v. *Steger*, 121 Tenn., 400, 117 S. W., 500). The deed referred to purported to have **been**

executed in 1904, and hence fell within the Acts of 1895, ch. 38, and could not in any event be used to support title under the first section of the act of 1819. Being good, however, between the parties to it, it might have been used as an estoppel against the claim of Mrs. Litton, if it had been proven *aliunde*; but there was no such evidence offered. Mrs. Litton does admit in her deposition that she "sold" the three acres to Mrs. Burchfield, but she was not asked whether she executed the deed offered, and there is no testimony on the point. The chancellor threfore did not err in execcluding the paper offered.

10. In 1888 Richard Smith and his wife, Rachel, executed a title bond to Alvis Litton, the husband of Savannah Litton, for a portion of the land in controversy, which was to be paid for in certain installments. Alvis Litton paid $50 and a yoke of oxen, which covered only a small part of the consideration mentioned in the deed. After his death, and after the death of Rachel Smith, her surviving husband, Richard, made a deed of this land to his daughter Savannah Litton, which she testifies was without consideration, in fact was a gift, and was not made in compliance with the title bond. It is insisted for defendants that Rachel Smith was estopped by the execution of this bond, and her heirs through her. The rule in this State that a married woman can convey her lands only by deed with privy examination is so well established that no authorities need be cited to support it. Whether Rachel Smith would have been estopped to claim the land, without refunding the consideration, if the evidence showed it had been paid into her own

hands (*Bradshaw* v. *Van Valkenburg,* 97 Tenn., 316, 323, 37 S. W., 88), we need not stop to consider, since there is no evidence of that kind in this record.

11.   It is insisted that as the deed made by Richard Smith purported to convey an estate in fee to the 75 acres therein described, to Mrs. Litton, and the persons to whom she conveyed that land, in various parts, had held adversely for more than seven years, their title was perfected.   The chancellor held that Savannah Litton could not recover against any of the persons to whom she had made deeds, but permitted the other complainants to recover their undivided interests.   There was no error in this.   As said in an earlier paragraph of this opinion, Richard Smith had a life estate in the land, and his deed conveyed, in legal effect, only this to Savannah Litton, and pending that life estate the statute would not run against the complainants who were remaindermen.   *Carver* v. *Maxwell,* supra.

12.   Defendant Nick Stanly purchased a part of the land in controversy at a chancery sale, under a decree on a bill filed by J. T. and E. W. Smith, administrators of Richard Smith, to enforce the vendor's lien, for purchase money supposed to be due Richard Smith's estate on a sale made by him to another person.   The amount received by the estate was $300, and this was distributed among the complainants and other children of Richard Smith as his distributees before it was known their mother owned the land. The chancellor, as a condition of the recovery, charged the land with the $300 and interest, and ordered an account to ascertain mesne profits,

Smith v. Cross.

which he decreed should be offset by such amount as the evidence should show any improvements made had permanently enhanced the value of the land, and also by the amount of taxes paid by Stanly. This was a correct decree.

The foregoing disposes of all of the errors assigned by the defendants. The complainants assigned error only upon the action of the chancellor in fixing the western boundary of the tract. This assignment presents a question of fact. We have fully considered it in the light of the record and briefs, and find that the chancellor reached the correct result.

Decree affirmed.