## W. C. Early Co. *v.* R. S. Williams *et al.*

### *(Jackson.* April Term, 1916.)

**1. MORTGAGES. Assignment. Transfer of debt.**

The lien of a mortgage or trust deed passes, without special assignment thereof, to the indorsee of a note or transferee of the debt secured by the instrument; the mortgage being transferred as incident to the debt. (*Post, pp.* 254-259.)

Cases cited and approved: Clark v. Jones, 99 Tenn., 639; Bank v. Smith, 107 Tenn., 483; Central Trust Co. v. Stepanek, 15 L. R. A. (N. S.), 1025; Costello v. Meade, 55 How. Prac. (N. Y.), 356; Cornish v. Abington, 4 Hurl. & N., 550; James v. Morey, 2 Cow. (N. Y.), 246; Curtis v. Moore, 152 N. Y., 159; Windle v. Bonebrake, (C. C.), 23 Fed., 165.

Cases cited and distinguished: Nat. Live Stock Bank v. First Nat. Bank, 203 U. S., 303; Viele v. Johnson, 15 Hun. (N. Y.), 332; Viele v. Judson, 82 N. Y., 32.

**2. MORTGAGES. Assignment. Priorities. Effect of failure to record.**

Assignments of mortgage need not be recorded to preserve priority over subsequent incumbrances. (*Post, pp.* 254-259.)

**3. MORTGAGES. Release. Effect of satisfaction or release.**

Where the holder of a mortgage has been induced by fraud to enter a discharge or release, if he does not take prompt steps to have his mortgage restored, he is estopped to assert its priority as against a subsequent purchaser or mortgagee relying on such cancellation. (*Post, pp.* 259-261.)

**4. ESTOPPEL. Equitable estoppel. Intent.**

To constitute estoppel, the act relied on must have been done with the knowledge or intent that it would be relied on. (*Post, p.* 261.)

Cases cited and approved: Parkey v. Ramsey, 111 Tenn., 308; Morris v. Moore, 30 Tenn., 433; Collins v. Williams, 98 Tenn., 531.

5. **ESTOPPEL. Equitable estoppel. Knowledge of facts.**

It is essential to estoppel that the person claiming it was himself not only destitute of knowledge of the facts, but without available means of acquiring such knowledge; for there can be no estoppel where both parties have the same means of ascertaining the truth. (*Post, p.* 261.)

Cases cited and approved: Crabtree v. Bank, 108 Tenn., 492.

6. **MORTGAGES. Release of assigned mortgage by mortgagee. Estoppel.**

Where notes and a recorded trust deed of land securing them have been pledged as security for debt of payee thereof, his release on the record of the trust deed which recites facts showing the notes were negotiable and not then due does not affect the pledgee's right or priority over later incumbrancers who made no inquiry of the trustee as to ownership of the notes. (*Post, pp.* 261, 262.)

Cases cited and approved: Roberts v. Halstead, 9 Pa., 32; Trust Co. v. Smythe, 94 Tenn., 530; Demuth v. Old Town Bank, 85 Md., 315; Swift v. Smith, 102 U. S., 442; Assets Realization Co. v Clark, 205 N. Y., 105.

---

FROM SHELBY

---

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— FRANCIS FENTRESS, Chancellor.

YANDELL HAUN, for plaintiff in error.

J. S. ALLEN, BYARS & CAPELL, McGEHEE & LIVINGSTON and G. J. McSPADDEN, for defendants in error.

W. C. Early Co. v. Williams.

Mr. Justice Williams delivered the opinion of the Court.

R. S. Williams, while doing a retail grocery business in Memphis, became indebted in an amount about $2,500 to complainant company, a body corporate doing a wholesale grocery business. Williams sold his stock of groceries to Smith, and also sold and conveyed to Smith a lot upon which stood a house. The consideration for the stock of goods was about $4,500, which was represented by a series of thirty-six negotiable notes of $120.87 each executed by Smith to Williams. These notes were secured by a trust deed on the realty executed to one Kelley as trustee. Williams then placed in the hands of the complainant company these notes (along with the trust deed) by way of a collateral pledge to secure the payment of the trade debt above referred to due to complainant company.

It appears that Williams in the sale of the stock of groceries overreached Smith, who later became dissatisfied. In order to prevent litigation, the following arrangement with the assent of complainant was entered into: Smith was to convey back to Williams, or his wife, the real estate, but the deed was to be placed in the hands of Kelley, and there to remain until Williams could manage, by the execution of another trust deed, or otherwise, to have complainant company secured as to the payment of the trade debt, and procure the notes to be turned over to Smith for cancellation. Accordingly the deed for a conveyance of the realty

to Mrs. Williams was drafted and signed by Smith. This deed, after acknowledgment by Smith, reached the hands of Kelley, who for some reason failed to hold it as agreed; on the contrary, he delivered it to Williams. This deed purported to vest the title in the wife of Williams to her sole and separate use, and was at once put to record. It recited a satisfaction of all the obligations which the trust deed to Kelley was executed to secure. It was not signed by Williams or by Kelley, in whom, as trustee, the legal title stood for the benefit of the holders of the notes. These notes, as seen, were yet held by the complainant in pledge. At this time no marginal release of the Kelley trust deed was entered on the registry books.

Later on Mrs. Williams incumbered the realty by a mortgage, and yet later she conveyed by a deed her equity of redemption. The persons taking these instruments from her claim to be innocent purchasers with rights superior to those of the complainant company. However, before the last-named instruments of incumbrance and of conveyance were accepted, it was required of Williams, the payee in the notes, that he sign a marginal release on the record opposite the trust deed to Kelley, trustee. This he did in the form following:

"I do declare that I am the true and lawful holder of the claim secured by the instrument within recorded and hereby acknowledge the satisfaction thereof and the discharge of the lien to secure the same in full. This 11th day of November, 1912. R. S. WILLIAMS."

W. C. Early Co. v. Williams.

This release was an unauthorized, false, and fraudulent one. The chancellor held that, "while complainant, W. C. Early Company, has been horribly defrauded" by Williams, it was not entitled to have enforced the lien of the Kelley trust deed for the satisfaction of the notes to the extent of its account to which they were hypothecated. Further facts which the chancellor thought deprived complainant company of its remedy are:

The deed of Smith to Mrs. Williams was executed May 9, 1912. Complainant turned over to Williams the trust deed to be used as an aid in the drafting of this deed, but it retained the notes. Complainant learned about September 1, 1912, that Kelley had turned over to Williams the deed of reconveyance and that it had been recorded. However, the person who examined the title prior to the execution of the mortgage by Mrs. Williams on November 19th caused Williams to enter the marginal release on November 11th.

The chancellor was of opinion that when the deed of Smith to Mrs. Williams was recorded it showed a release of the lien of the Kelley trust deed; that on the discovery of its recordation complainant should have moved promptly in an action to have the record corrected; that the failure to do so before November 19th was laches that barred it in respect to an enforcement against the incumbrance of that date to one who trusted the record's showing at the time.

The court of civil appeals on appeal affirmed the decree of the chancellor; but we are of opinion that

the rights of complainant company have been misconceived, and that the correctness of the decree cannot be maintained.

At the outset of the discussion of the relative rights of complainant, as the transferee and holder of the notes, and of the subsequent incumbrancer and grantee claiming priority, we should take note of the fact that in this State we have no statutory requirement that the assignee of notes secured by a mortgage or trust deed must, in order to the preservation of his lien as against third persons, record an assignment of the instrument which secures same. Several States have such statutes as parts of their recording systems, and the decisions in such States are to be noted for differentiation in many instances for that reason. It is a well-settled rule with us that the lien of a mortgage or trust deed passes, without a special assignment thereof, to the indorsee of a note or transferee of the debt secured by the instrument. The policy of the law is to treat the note as the principal thing and the mortgage as the incident—the transfer of the note secured as a transfer *pro tanto* of the incident, the lien of the mortgage. *Clark* v. *Jones,* 99 Tenn., 639, 27 S. W., 1009, 42 Am. St. Rep., 931; *Bank* v. *Smith,* 107 Tenn., 483, 64 S. W., 756.

In such case there is no active duty resting on the indorsee of a note to watch the record, to prevent incumbrances from going to record and becoming clouds on his rights thus fixed. When he invests on a clear record of title, he may rest quiescent. As was

said by Mr. Justice Peckham touching a claimed duty on the assignee's part in regard to his making the record show his assignment:

"There must be a law which provides for their record, either in express terms or by plain and necessary implication from the words stated. . . . There must be some legal duty imposed upon the assignee before the necessity arises for recording the assignment." *National Live Stock Bank* v. *First Nat. Bank,* 203 U. S., 303, 27 Sup. Ct., 79, 51 L. Ed., 192.

And see annotation of *Central Trust Co.* v. *Stepanek,* 15 L. R. A. (N. S.), 1025.

We think that the decrees of the lower courts were due to a misconception of certain cases urged on them by the counsel of the subsequent incumbrancer and grantee.

The chancellor (followed in the matter by the court of civil appeals) cited and quoted as below *Viele* v. *Johnson,* 15 Hun (N. Y.), 332, where the supreme court at general Term said in respect to the estoppel of an assignee by reason of a release of a mortgage entered by the mortgagee after the assignment:

"For, if a man so conducts himself, whether intentionally or not, that a reasonable person would infer that a certain state of things exists, and acts on that inference, he shall be afterwards estopped from denying it."

Seemingly the fact was not noted that this decision was on appeal reversed by the court of appeals in *Viele* v. *Judson,* 82 N. Y., 32, where this language was

used, clearly announcing what we think is sound doctrine:

"The mortgage of plaintiff has priority over that held by Judson, unless there is force in the argument very ably pressed upon our consideration that Viele is estopped from enforcing his mortgage as against Judson by reason of his knowledge of the state of the record and his omission to correct it. That is the ground taken by the General Term, and very forcibly asserted in the opinion accompanying their judgment. The doctrine is broadly stated that, although the discharge was a fraud upon Viele, was perpetrated by other persons, without his previous knowledge or participation, the record cleared not by him or with his consent, he, having done or omitted no act up to the moment of the discharge, was nevertheless estopped, because, having learned the state of the record, he did not within a reasonable time either enforce his mortgage by foreclosure or bring an action to reinstate it upon the record; that is, a man may be estopped for not beginning a lawsuit. We cannot assent to this doctrine, unless the authorities are decisive in that direction. The case of *Costello* v. *Meade,* 55 How. Prac. (N. Y.), 356, appears to sustain the position. The discharge . . . (in that case) was, in fact, a forgery by which the record had been cleared. A subsequent incumbrance had been recorded, and because the prior mortgagee neglected to reinstate the record he was held to be stopped from enforcing his own security. The only authority upon which the decision

was rested appears to have been *Cornish* v. *Abington*, 4 Hurl. & N., 550. In that case the rule is stated that if any person, by a course of conduct, or by actual expressions, so conducts himself that another may reasonably infer the existence of an agreement or license, whether the party intends he shall do so or not, the person so conducting will not be permitted to gainsay the inference. The statement is well enough in its application to the facts of that case."

After analyzing the facts of the English case, and pointing out that the distinct fact which there worked the estoppel was silence when the defendant knew that it was being relied on to the hurt of the other, the situation originating a duty which the defendant owed to the plaintiff and of which he had actual knowledge, the opinion then, after citing other cases that involved the same distinctive features, proceeds:

"In all of them the silence operated as a fraud and actually itself misled. In all there was both the specific opportunity and apparent duty to speak. And in all the party maintaining silence knew that some one was relying upon that silence, and either acting or about to act as he would not have done had the truth been told. These elements are essential to create a duty to speak. We do not find them in the case at bar. The records which showed the discharge showed also its invalidity. The facts were all there, and needed only reasonable care to insure their discovery. . . . The danger lay in an inaccurate and incomplete search.

135 Tenn.—17

Against that possibility the plaintiff was not bound to provide. Nobody relied on his silence or was misled by it. Judson was misled by the state of a part of the record, not by Viele's silence. He did not rely upon that, because he did not even know that Viele knew of the discharge. ·Indeed, for aught that appears, he did not know that there was such a man as Viele, much less than he was silent when he ought to have spoken, and so was justifying an inference. How can it be fairly said that Viele's silence operated as a fraud? It does not appear that he knew or suspected that a second mortgage was given, or even that there was such a man as Judson. The latter drew no inference from Viele's conduct, for he neither knew him nor his conduct. The inference he drew was wholly from the acts of other persons.''

See, also, *James* v. *Morey,* 2 Cow. (N. Y.), 246, 14 Am. Dec., 475; *Curtis* v. *Moore,* 152 N. Y., 150, 46 N. E., 168, 57 Am. St. Rep., 506; *Windle* v. *Bonebrake* (C. C.), 23 Fed. 165; and other cases cited 15 L. R. A. (N. S.), p. 1033.

The quotation from the opinion has been made full because of its peculiar appositeness in its every comment on the facts to the phases of fact in the pending case. The parallel between the facts of the two cases as they relate to estoppel *in pais* is all but exact, and such quotation saves us a detailed recital of the evidence.

Both of the lower courts quote Jones on Mortgages, section 967, to sustain their position:

"The holder of the mortgage wrongfully discharged should therefore lose no time in taking steps to have his mortgage restored."

This is true where the holder has by fraud been caused himself to enter a discharge or release. He then, of course, knows of the dangerous situation his own act has created. But, if the quotation had been made fuller, it would have disclosed that Mr. Jones coincides in opinion with the New York court of appeals, as follows (italics ours) :

"As between a mortgagee whose mortgage has been discharged of record *solely through the act of a third party,* which act was unauthorized by the mortgagee, and for which he was in no way responsible, and a person has been *induced by such cancellation* to believe that the mortgage has been canceled in good faith, and has dealt with the property by purchasing the title or accepting a mortgage thereon as security for a loan, the equities are balanced. In such case the rights will be settled in the order of time, and the prior mortgage must remain despite the apparent discharge. If, however, the mortgagee is in any way responsible for the mortgage being released of record, or if the release of record is procured through the neglect, incaution, credulity, or misplaced confidence of the mortgagee, a different rule will govern in determining the equities," etc. 2 Jones on Mortgages (7th Ed.), section 967; 20 Am. & Eng. Enc. L. (2d Ed.), 1073.

In the instant case complainant company did nothing to facilitate the fraud committed on itself. Parting with the trust deed for the purpose stated was meaningless in the matter of an equitable estoppel, under the rule in this State already adverted to. Kelley was not the agent of complainant, but the regular counsel of Williams and employed and paid to draft the deed of Smith to Mrs. Williams by Smith on the insistence of Williams.

Further, and particularly, the later incumbrancer and grantee did not rely upon the deed to Mrs. Williams or its recitals as constituting a discharge of the lien. As already seen, Williams was required to enter a marginal release on November 11th before the title would be passed. It was this marginal release that was relied on by the later incumbrancer; but it was not known to complainant company before the subsequent incumbrancer had acted to her own hurt on the 19th. In the circumstances stated, and as above indicated, how can it be justly urged that complainant company is equitably estopped? Williams was not even a mortgagee proper; the legal title to the realty stood vested in Kelley, trustee. Neither Williams nor Kelley signed the deed to Mrs. Williams to operate as a discharge or an apparent discharge in their names; and it is difficult to conceive how Smith by his own recitals in his deed could even apparently discharge a lien against his own property so as to mislead. If the deed to Mrs. Williams could not reasonably and did not in

fact mislead, how can an estoppel of complainant be predicated upon it?

The principle upon which the above authorities decline to apply the rule of estoppel *in pais* has been more than once recognized in this State:

(a) The act relied on must have been done with the knowledge or intent that it would be relied on by the other. *Parkey v. Ramsey,* 111 Tenn., 308, 76 S. W., 812; *Morris v. Moore,* 11 Humph. (30 Tenn.), 433; *Collins v. Williams,* 98 Tenn., 531, 41 S. W., 1056.

(b) It is essential to the estoppel that the person claiming to have been influenced to his detriment was himself not only destitute of knowledge of the state of facts, but was also without available means of acquiring such knowledge. Where both parties have the same means of ascertaining the truth, there can be no estoppel. *Crabtree v. Bank,* 108 Tenn., 492, 67 S. W., 797; *Collins v. Williams, supra.*

Although the notes secured by the trust deed were negotiable in form and were far from being due, and were indicated so to be by the recitals of the trust deed to Kelley, the subsequent incumbrancer and grantee made no inquiry of Kelley, who could have given information that the notes were pledged with complainant; and no effort was at any time made to have Williams or wife exhibit the notes. We have seen that complainant, which acquired the notes on a clear record, had a right to assume that its right to the security of the lien would not be disturbed by later entries on the record. But the present estoppel asserters had

W. C. Early Co. v. Williams.

not made an investment; they were in motion, not entitled to be quiescent; and, being so in motion, the duty of making inquiry was on them to earn the *status* of innocent purchaser, on a record at least to be deemed clear, for their sake. This they have not done. *Roberts* v. *Halstead,* 9 Pa., 32, 49 Am. Dec., 541, cited with approval in *Trust Co.* v. *Smythe,* 94 Tenn., 530, 29 S. W., 903, 27 L. R. A., 663, 45 Am. St. Rep., 748; *Demuth* v. *Old Town Bank,* 85 Md., 315, 37 Atl., 266, 60 Am. St. Rep. 322; *Swift* v. *Smith,* 102 U. S., 442, 26 L. Ed., 193; *Assets Realization Co.* v. *Clark,* 205 N. Y., 105, 98 N. E., 457, 41 L. R. A. (N. S.), 462, and cases cited.

Believing its rulings to have been erroneous in the respects indicated, the decree of the court of civil appeals is reversed, on grant of the writ of *certiorari;* and the cause is remanded to the chancery court of Shelby county for a decree in favor of complainant and proceedings thereunder for the subjection of the collateral. So ordered.