## CRABTREE v. BANK.

### (*Nashville.* March 22, 1902.)

1. EXECUTION. *Issued by Justice of the Peace after return of papers for condemnation proceedings, void.*

   An execution and sale thereunder are absolutely void and communicate no title to the purchaser where the execution is an *alias*, issued by a Justice of the Peace, after the original execution had been returned, levied on the land of one of the defendants, and the papers in the case delivered to the Circuit Court and the case there docketed for the condemnation and sale of the land. The Circuit Court acquired and the Justice's Court lost all jurisdiction over the entire case, upon delivery of the papers and docketing of the case in the former court. (*Post, pp. 484-490.*)

   Code construed: §§ 4808, 4809, 5892 (S.); §§ 3793, 3794, 4854 (M. & V.); §§ 3080, 3081, 4077 (T. & S.).

   Cases cited: Mann *v.* Roberts, 11 Lea, 57; Cowan *v.* Lowry, 7 Lea, 620; Rumbough *v.* White, 11 Heis, 260; Anderson *v.* Kimbrough, 5 Cold., 260; McGavock *v.* Schneider, 7 Heis., 467; McEwen *v.* Brandon, 2 Tenn., Cas., 48.

2. SAME. *Same.*

   And such *alias* execution is not saved from invalidity by the fact that the plaintiff, subsequent to its issuance and levy, dismissed from the Circuit Court the condemnation proceedings on the original execution and levy, though such dismissal, if it had been made before issuance of the *alias*, might have restored the justice's jurisdiction of the case. (*Post, p. 490.*)

3. ESTOPPEL. *Acquiescence insufficient to create, when.*

   Acquiescence by overt acts of the owner of land, in the claim made to same without possession by a purchaser thereof at a void judicial sale and by his vendee, will not estop him to recover the land, where both parties, by mutual mistake, supposed the sale valid and the matters constituting the infirmity of the

title were apparent on the face of the public record of the court ordering the sale, which was equally accessible to both parties. (*Post, pp. 490-493.*)

---

FROM FRANKLIN.

---

Appeal from the Chancery Court of Franklin County. T. M. McConnell, Ch.

Arthur Crownover and R. L. Bright for Crabtree.

Embrey & Taylor and Geo. E. Banks for Bank.

Beard, J. The bill in this cause attacks certain proceedings in the Circuit Court of Franklin County, in which the property of complainant was condemned to be sold, under a levy of an execution issuing from the office of a Justice of the Peace, and asking that the deed executed by the Sheriff, who sold this property by virtue of a writ of *vinditioni exponas* issuing from said Court, as well as the several subsequent deeds, under which some of the defendants claim, be decreed to be a cloud upon the title of complainants, and for other relief incident to such a decree.

. The proceedings in that case, as far as it is necessary to set them out, were as follows: The defendant, the Bank of Winchester, recovered a judgment, in 1891, before a Justice of the Peace of Franklin County, against complainant as principal, and C. C. Crabtree, J. C. Lomey, B. F. Holder, and W. J. Mooney, as sureties. Soon thereafter an execution, issuing from this judgment, was levied upon the lands of two of the sureties, and the papers in the cause were at once delivered by the Justice, in accordance with the statute, to the Clerk of the Circuit Court of that county for an order of condemnation, and the cause was by him entered on the trial docket of that Court as No. 27. After this was done, discovering that the principal in the judgment, and the complainant in this cause, was the owner of an undivided interest of one-third in a tract of two thousand acres, subject to execution, the attorney for the Bank of Winchester appeared before the Justice of the Peace, who had issued the execution, and made an affidavit which, after reciting the recovery of the judgment, the issuance and levy of the execution upon the several tracts of two of the sureties, and the filing of the papers in the Circuit Court for an order of condemnation, concluded by saying that having discovered property of the principal upon which a levy could be made, affiant asked the issuance of *alias* execution to that end. In accordance with

the prayer of the affidavit, an *alias* execution was issued and levied on the interest of B. F. Crabtree, in the two-thousand acre tract.

At the time of the issuance and levy of this last execution, the papers in the cause were already lodged in the Circuit Court of Franklin County, and the cause stood on the trial docket of that Court, as has been stated already, as file No. 27. No effort had been made to dismiss the cause or remand it by *procedendo* or otherwise to the office of the Justice of the Peace.

This *alias* execution, with the levy indorsed upon it, and the affidavit referred to, were taken to the Circuit Court and there filed. It was on the papers, including this last levy, that the order of condemnation was entered, the *venditioni expo-nas* was issued and the sale made, which are attacked by the present bill.

Dismissing from consideration certain features of the case, which serve to confuse rather than to make clear the point in issue, we will come to the question, whether the Justice had the juris-diction to issue this second execution, under the facts already given. For it is clear that if he had no such jurisdiction, then the attempted levy of it by the officer, upon the property of the complainant, was unauthorized, and the order of condemnation, followed by the *venditioni exponas*

and sale thereunder, were void and without any legal effect.

For a determination of the question, just suggested, a reference to the statutory provisions regulating proceedings of this character is necessary. Section 4808 of the (Shannon's) Code directs that "when an execution issued by a Justice of the Peace is levied on real estate, it shall be the duty of the Justice to whom the same is returned to return the execution, together with the judgment and papers in the cause, to the next Circuit Court of his county for condemnation." Section 4809 provides that "the Circuit Court, upon the return then made, may condemn the land and order the same . . . to be sold by the Sheriff of the county, in satisfaction of the judgment and costs," while by Sec. 4810 it is enacted that "if the Circuit Court condemns the land to be sold, the clerk should enter on the minutes the warrant, attachment, or other leading process, with the officer's return thereon . . . affidavits for attachment or other process, the judgment of the Justice, the executions levied with the officer's return, ,and the judgment of the Court." See, also, Sub. Sec. 8 of Sec. 5892 of the Code.

Thus it will be seen, under these provisions, every paper issued by the Justice, or in any way connected with the cause, where a levy on land has been made by an officer by virtue of

an execution issuing from a Justice's Court upon a judgment pronounced by him, together with the judgment itself, is to be transmitted to the Circuit Court. Upon being filed there, the jurisdiction of that Court attaches, and that of the Justice ends.

It is true that in *Mann* v. *Roberts,* 11 Lea, 57-59, it was held that an order of condemnation is not a judgment in the strict sense of the word, but only a mode of executing the levy. If the papers are regular, the condemnation follows as a matter of course (*Cowan* v. *Lowry,* 7 Lea, 620), yet the execution debtor may appear and object that the proceedings are so irregular as not to authorize any order of condemnation. But while such an order is only a judgment *sub modo,* yet it can be appealed from by the defendant whose land is levied on, and equally the execution creditor may appeal from a refusal of the Circuit Judge to award him an order of condemnation. *Rumbrough* v. *White,* 11 Heis., 260; *Anderson* v. *Kimbrough,* 5 Cold., 260.

Section 4804 of the (Shannon's) Code provides as follows: "The Clerks of the Circuit Courts of this State may issue execution for the unsatisfied debt and costs, in all cases, where a Justice's execution has been levied on land, and return made thereof to his Court . . . and the real estate executed fails for any cause to satisfy the judgment." From this it would seem

that. the necessary implication is, that this legislative scheme for the condemnation of land, levied on with an execution issuing from a Justice's judgment, contemplated that the filing of the papers in the cause in the Circuit Court carried with it the judgment as well, and that thus the Justice would be stripped of every vestige of control over the cause. It was evidently in this view, that in *McGavock* v. *Schneider,* 7 Heis., 467, the Court held that the proper course for the procurement of an *alias* execution, in case one is desired, after the papers of the Justice have been returned to the Circuit Court, and before the land is sold, is to apply to that Court for a *procedendo*. In other words, that having lost all jurisdiction upon filing the papers, that the only way by which it can be again acquired is by a surrender of jurisdiction upon the part of the Circuit Court by a *procedendo,* or some other order for a remand or for a dismissal.

But it is said that while a *procedendo* is a proper method, it is not the only one. This contention implies the concession that in some legal way the jurisdiction of the Circuit Court must end before that of the Justice can once more attach, and this is the insistence of the complainant.

The argument of his counsel is that the Circuit Court, having jurisdiction of the entire cause

when this *alias* execution was issued by the Justice of the Peace, it was a *brutum fulmen,* conferring no authority upon the officer, and that the levy made by him was not a predicate for the order of condemnation afterward entered by the Circuit Court. In *McEwen* v. *Brandon,* 2 Tenn. cases, 48, the Court, speaking through McFarland, J., held that the Circuit Court was the proper forum in which to have an order of revivor and execution in condemnation cases, upon the ground that "the whole case is removed from the Justice to the Circuit Court."

It is true that a *procedendo* to the Justice was not essential. A simple order of dismissal would have been sufficient. Such an order was made several days after the issuance of the *alias* execution and its levy. Then it was too late. It could not relate back so as to give vitality to that which was born dead.

So it is we agree with the Court of Chancery Appeals that the contention of the complainant that the condemnation proceedings were absolutely void.

Holding this, that Court, however, dismissed the bill of complainant upon the ground that his acquiescence for a little over seven years in the claim of title by the bank and its vendees to the property resting on these proceedings, together with his conduct, estopped him from maintaining this suit.

The finding of facts on which this conclusion is based stated substantially is, that in June, 1892, within a few months after the sale was made, the complainant and the Cashier of the bank met and talked over the matter, the Cashier saying to Mr. Crabtree that the bank was the purchaser of the property at the Sheriff's sale; that in 1893 another conversation occurred between the same parties, when the complainant said that he proposed to pay this debt and redeem this land; that upon his application, the bank extended the time for redemption; that the bank delayed taking a deed from the Sheriff until January, 1896, about four years after the sale had taken place; and that during all this time the complainant and the defendant regarded the sale as entirely valid, and so treated it. They further find that, after taking the Sheriff's deed, the bank determined to sell the interest in the land so acquired by it, and that to that end its Cashier went upon the tract to obtain a better knowledge of it; that the complainant bore him company, showing him some of the lines and one or more of the corners, knowing at the time that the bank was asserting ownership under its purchase; that after this, the bank bought the other two-thirds interest from its owner and then sold and conveyed to the defendant Long the whole tract by a warranty deed, and subsequently Long conveyed to others of the defendants.

Upon these facts, as thus found, does the rule of estoppel arise? It is to be observed that here we have a mutual mistake as to the effect of a court record to which the complainant and the bank were parties. Each supposed that this record was without a flaw. In this both were mistaken. This record was within the reach of these parties, and an examination, at any time, would have disclosed to either a vital infirmity. This being so, we think the defendants cannot rely on the doctrine of equitable estoppel. For it is essential, as a general rule, to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." *Brant* v. *Virginia Coal, etc., Co.,* 93 U. S., 326; *Steel* v. *St. Louis Smelting, etc., Co.,* 106 U. S., 447; *Storm* v. *Baker,* 150 U. S., 312.

Without extending this opinion further, it is sufficient to say that we have examined the case of *Robertson* v. *Winchester,* 85 Tenn., 172, relied on by the Court of Chancery Appeals, and we

do not think it supports the holding of the Court on this point.

The result is, the decree of the Court of Chancery Appeals, in so far as it dismisses the bill of complainant, is reversed, and a decree will be entered here removing the various conveyances mentioned in the bill as a cloud on complainant's title, and for a remand to the Chancery Court of Franklin County, in order that an account may be taken, in which the complainant will be charged with the amount of the Justice's judgment and interest and all taxes paid by the defendants, and credited by one-third of the rents and profits and one-third the net value of any timber taken from the property, and if any balance is found against him, it will constitute a lien on his interest in the property, to be satisfied by a sale under a decree of that Court enforcing the same, and if a balance is found in his favor, it will be enforced by a proper decree and execution. The costs of the cause, to this date, will be paid by the defendants; all future costs will await the final determination of the case.