NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0003n.06

Case Nos. 15-5507/5516

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 06, 2016
DEBORAH S. HUNT, Clerk

DEPOSITORS INSURANCE COMPANY,       )
                                    )
    Plaintiff-Appellee,             )
                                    )       ON APPEAL FROM THE
v.                                  )       UNITED STATES DISTRICT
                                    )       COURT FOR THE WESTERN
                                    )       DISTRICT OF TENNESSEE
ESTATE OF TIMOTHY A. RYAN III &     )
MARGARET JEAN RYAN,                 )
                                    )       **OPINION**
    Defendants-Appellants.          )

BEFORE: **SILER, MOORE, and GIBBONS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.**   After Margaret Ryan was injured in a vehicle accident involving a car that her husband, Timothy Ryan, was driving, she sued the Estate of Timothy Ryan for damages. Depositors Insurance Company, through which Timothy Ryan had an automobile insurance policy, brought an action for a declaratory judgment, seeking to declare that a policy exclusion precluded coverage for Margaret Ryan. Margaret Ryan and the Estate (collectively, the appellants) appeal the district court's grant of Depositors' motion for judgment on the pleadings. Because the unambiguous language of the Policy precludes coverage for Margaret Ryan, and the three affirmative defenses she raises fail on the merits, we affirm the district court's judgment.

I.

On December 13, 2009, Timothy Ryan died in a car accident involving the vehicle he was driving. His passengers, his wife Margaret Ryan and their grandchildren, were injured in the

accident. At the time of the accident, Timothy Ryan's insurance policy (the Policy) through Depositors Insurance Company (Depositors) was in effect. In a letter to Andrew Ryan—personal representative for his two children injured in the accident—dated October 21, 2010, Depositors advised him that there was "$5000 in available medical payments coverage under this policy that is available regardless of fault," and that the statute of limitations for his bodily injury claims would expire December 13, 2010. Letter to Andrew Ryan 1, ECF No. 38-2. Margaret Ryan was copied on this letter, but the letter references only her grandchildren's claims, not her own.

On December 1, 2010, Margaret Ryan and Andrew Ryan,[1] individually and as father and personal representative of the grandchildren, filed an action against the Estate of Timothy Ryan (the Estate) in state court, seeking damages for physical and emotional pain and suffering. Depositors provided legal representation to the Estate in the state court action but alleged that one of the Policy's exclusions (the Exclusion) precludes coverage for Margaret Ryan's injuries.

The Policy has a "Quick Reference" page that does not reference the Exclusion. Twice, however, in all capital letters, this page states "READ YOUR POLICY CAREFULLY." Insurance Policy 19, ECF No. 38-1.

The Policy provides, in relevant part:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no

---

[1] Andrew Ryan did not file a notice of appeal from the district court's judgment, so he is not a party to this appeal.

duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

Insurance Policy 21. On the same page that provides this coverage, and on the subsequent page, exclusions are listed, but not the exclusion relevant to this appeal.

The policy later states, on a page entitled "CHANGES PROVISION," that "this policy contains all of the coverage agreements between you and us. Its terms may not be changed or waived except by an endorsement issued by us." *Id.* at 37.

At the end of the Policy is the Exclusion. On a page entitled "LIABILITY COVERAGE EXCLUSION ENDORSEMENT," it states:

**LIABILITY COVERAGE**

The following exclusion is added to Part A, Section A:

We do not provide Liability Coverage for any person for "bodily injury" to you or any "family member."

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

*Id.* at 57. The Exclusion is located at the top of the page, in the same size font as the rest of the Policy. Also, the Exclusion is the only provision on the page. The endorsement number for the Exclusion, PP0326, is referenced on the "DECLARATIONS" page.

The "DEFINITIONS" section of the Policy contains the following relevant definitions:

A. Throughout this policy, "you" and "your" refer to:
 1. The "named insured" shown in the Declarations; and
 2. The spouse if a resident of the same household. . . .
F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

*Id.* at 20. Timothy Ryan and Margaret Ryan are both listed on the "DECLARATIONS" page as "named insured." *Id.* at 17.

In a letter to Margaret Ryan dated March 28, 2013, Depositors informed her that "even if you are successful in your claims against [the Estate], this insurance policy will provide no coverage or pay any judgment you might obtain against the estate." Letter to Margaret Ryan 2, ECF No. 38-3. On May 22, 2014, Depositors amended its claim under 28 U.S.C. § 2201 and Rules 15(a)(1)(B) and 57 of the Federal Rules of Civil Procedure, seeking a declaration that the Policy does not provide coverage for Margaret Ryan's injuries. Margaret Ryan and the Estate filed answers, raising the affirmative defenses of laches and waiver and estoppel, and asserting that the relevant exclusion is contrary to public policy[2] and that the Policy is a contract of adhesion. Depositors then moved for judgment on the pleadings. Margaret Ryan opposed the motion and the Estate adopted her brief in opposition.

The district court granted Depositors' motion. It concluded that the Exclusion is not ambiguous and that it is standard for insurance companies to provide coverage in one section and narrow it through an exclusion, as Depositors did here. Regarding the affirmative defenses, the court noted that the Ryans did not cite authority for their argument that Depositors' three-year delay was unreasonable. In addition, the court indicated that the Ryans alleged prejudice only to Margaret Ryan, not the Estate, so the laches defense did not apply. Regarding the waiver/estoppel defense, the court concluded that to succeed, Depositors would have had to make a misrepresentation to the Estate, not to Margaret Ryan, but also that the express terms of the Policy precluded application of the doctrine. Finally, the court concluded that the Policy's terms were not "oppressive or unconscionable," nor "beyond the reasonable expectations of an ordinary person," so the contract of adhesion defense also failed. Order 13–14, ECF No. 45.

---

[2] The argument that the Policy is contrary to public policy was not raised in the appellants' briefing on appeal, so the issue is waived. *See Guilmette v. Howes*, 624 F.3d 286, 292 (6th Cir. 2010) ("Our general rule is that an appellant abandons all issues not raised and argued in its initial brief on appeal.") (quoting *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006)) (internal quotation marks omitted).

The appellants filed timely notices of appeal.[3]

## II.

We review a district court's grant of a motion for judgment on the pleadings under Rule 12(c) using the same *de novo* standard as a motion to dismiss under Rule 12(b)(6). *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). A party's Rule 12(c) motion is properly granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).[4] We will accept as true "all well-pleaded material allegations" of the opposing party. *Johnson*, 624 F.3d at 746 (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)). However, we "need not accept as true legal conclusions or unwarranted factual inferences." *Winget*, 510 F.3d at 581–82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). Jurisdiction in this case is based on diversity of citizenship, so we apply Tennessee substantive law. *See id.* at 582 (citation omitted). We follow the decisions of the Tennessee Supreme Court, but unless that court would decide the issue differently, state appellate court decisions are persuasive. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008); *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005).

## III.

Appellants argue that the district court erred because it analyzed the affirmative defenses under a heightened pleading standard. The district court asserted that "a defendant's pleadings

---

[3] The appeals of Margaret Ryan and the Estate were consolidated. Margaret Ryan filed an Appellant Brief and a Reply Brief. The Estate moved to adopt the Appellant Brief, and this panel granted the motion.

[4] Appellants argue that there are disputed *issues* which preclude a grant of judgment on the pleadings. They assert that the fact that they dispute whether the Policy provides coverage and that they raised several affirmative defenses both create disputed issues, but they mischaracterize the relevant inquiry. We look not to whether there are any disputed *issues*, as any opposed motion will necessarily involve issues in dispute. Rather, we must look to whether any issues *of fact* are in dispute. *Winget*, 510 F.3d at 582. Appellants have noted only disputed legal conclusions, not factual disputes, so we will consider the merits of this appeal.

must contain sufficient facts to state a [defense] that is plausible on its face." Order 5 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). Nonetheless, the court did not limit its analysis to the statements contained in appellants' answers but rather analyzed the merits of the arguments presented in the briefs and concluded they lacked merit. It seems this circuit has not addressed the precise issue of whether the *Twombly*/*Iqbal* heightened pleading standard applies to affirmative defenses. But because the district court did not actually apply that standard to appellants' affirmative defenses, it is unnecessary for us to resolve this issue.

IV.

Next, appellants contend the Policy is ambiguous because of its structure. They point to several provisions that could be read to provide coverage, highlight the fact that the "Quick Reference" page at the beginning of the Policy does not include the Exclusion, and conclude "[f]iguratively, throughout this policy, it giveth, giveth, giveth . . . and then at the last page . . . taketh away." R. at 24, Appellant Br. 21.

Under Tennessee law, insurance contracts are governed by the same rules of construction as ordinary contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). They "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 306 (Tenn. 2007) (citation omitted). Provisions subject to more than one reasonable interpretation are ambiguous, *Hollis v. Doerflinger*, 137 S.W.3d 625, 629 (Tenn. Ct. App. 2003), and must be construed against the insurer. *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 954 (Tenn. Ct. App. 1996); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 866 S.W.2d 539, 541 (Tenn. Ct. App. 1993) (quoting *Harkavy v. Phoenix Ins. Co.*, 417 S.W.2d 542, 547 (Tenn. 1967)). However, the court

must take care not to create ambiguities. *Setters*, 937 S.W.2d at 954. Absent ambiguities, the court must "take the ordinary meaning of the words used, favoring neither party in their construction." *Id.* (quoting *Omaha*, 866 S.W.2d at 541). If there is no "fraud, overreaching, or unconscionability, the courts must give effect to a provision in an insurance policy when its terms are clear and its intent certain." *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001). Moreover, a policy exclusion should be upheld as long as it "merely limits coverage and does not totally emasculate a previously stated coverage." *Setters*, 937 S.W.2d at 954 (citation omitted).

The Exclusion here is substantively unambiguous. It is plainly labelled as an exclusion, explicitly references which coverage provision it limits (Part A, Section A), and does not wholly eliminate the coverage previously granted. Moreover, Tennessee courts have routinely upheld similar provisions as unambiguous. *See id.* at 952, 954 (finding an exclusion "[f]or bodily injury to you or any 'family member'" to be unambiguous); *see also Purkey v. Am. Home Assurance Co.*, 173 S.W.3d 703, 704–05 (Tenn. 2005) ("This Court has twice held that household and family exclusion clauses in automobile insurance contracts are valid and enforceable.") (citing *Dockins v. Balboa Ins. Co.*, 764 S.W.2d 529, 530 (Tenn. 1989); *Holt v. State Farm Mut. Auto. Ins. Co.*, 486 S.W.2d 734, 735 (Tenn. 1972)).

The heart of appellants' argument is that the Policy is structurally ambiguous because of the distance between the coverage provision and the Exclusion. Yet, appellants point to no binding precedent supporting that an exclusion located many pages away from the coverage provision it limits renders a policy ambiguous. To the contrary, though not specifying the distance between the coverage provision and the exclusion, Tennessee case law indicates that it is not uncommon for an exclusion to be separate from the coverage provision to which it relates.

In *Setters*, the court found that a policy containing coverage provisions that "*later* enumerate[d] certain exclusions" was not ambiguous when the policy was viewed as a whole. 937 S.W.2d at 954 (emphasis added). Similarly, in *Omaha*, the court found a policy unambiguous where "[c]overage of all types [was] *initially set forth in one part*, and all the exclusions [were] *grouped separately*." 866 S.W.2d at 541 (emphasis added). *Holt v. Pyles* upheld a policy where the exclusions "appear[ed] *later* in the policy," but were referred to in the "declarations/summary portion" by a clause stating "[t]he coverage and limits shown here are subject to the restrictions, conditions, and exclusions of the policy and its endorsements," and included a list of endorsement numbers. Nos. M2005-02092-COA-R3-CV, M2005-02094-COA-R3-CV, 2007 WL 1217264, at *5–6 (Tenn. Ct. App. Apr. 24, 2007) (second alteration in original) (emphasis added). The court, noting that "the declarations portion of a contract cannot be construed in isolation from the remainder of the contract," concluded that the policy, when read as a whole, was not ambiguous. *Id.* at *6.

When reading the Policy as a whole and taking care not to construct ambiguities, the separation between the coverage and the Exclusion provisions does not create an ambiguity. The Exclusion's number, PP0326, and other endorsement numbers are referenced in the "DECLARATIONS" page at the beginning of the Policy. While appellants insist that based on the "Quick Reference Guide," a "reasonable consumer" would believe the first 15 pages comprised the entire Policy, R. at 20, Appellant Br. 20–21, we believe a reasonable consumer would heed the warnings to "READ YOUR POLICY CAREFULLY" and not ignore the pages following the main policy provisions, particularly one labelled "LIABILITY COVERAGE EXCLUSION ENDORSEMENT," that references a provision—Part A, Section A—within the main policy. *See* Insurance Policy 19, 57. Because it is common for an insurance policy to grant

coverage, then exclude it later in the policy, appellants' arguments that the "Declarations Page" and the "Insuring Agreement" appear to grant coverage to Margaret Ryan fail, because any coverage these provisions purported to grant was excluded by the Exclusion.[5]

Because there is no ambiguity, based on the Exclusion's ordinary meaning, Margaret Ryan is not covered under the Policy. The Exclusion applies to "you" or any "family member." Margaret Ryan falls under the definition of "you" because she is a "named insured," as well as the definition of "family member" because she is related to another named insured, Timothy Ryan, by marriage and they lived together. Thus, the Exclusion precludes coverage for Margaret Ryan's injuries.

V.

A.

Without argument or citation to case law or the record, appellants maintain that Depositors' three-year delay "clearly shows a lack of diligence." R. at 25, Appellant Br. 16. Regarding the prejudice prong of the laches analysis, they argue that the 2010 letter to Margaret Ryan "effectively induc[ed] or at least encourag[ed] the litigation," that both Margaret Ryan and the Estate suffered prejudice because of expenses incurred in the state court litigation, and that the Estate was prejudiced because it will face judgment if Margaret Ryan is successful in that suit. R. at 24, Appellant Br. 16–17.

The equitable defense of laches rests on the principle that "equity will not intervene on behalf of one who has delayed unreasonably in pursuing his rights." *Long v. Bd. of Prof'l Responsibility*, 435 S.W.3d 174, 181 (Tenn. 2014) (quoting *Dennis Joslin Co. v. Johnson*,

---

[5] Appellants also argue a provision entitled "Transfer of Your Interest in the Policy" should be read to "provid[e] coverage to Ms. Ryan in the event of Mr. Ryan's death." R. at 24, Appellant Br. 19–20. This is a misreading of the provision, which merely allows the name insured's *interest in the policy* to be transferred to a surviving spouse. If Margaret Ryan received Timothy Ryan's interest in the Policy, she would still be precluded from coverage under the Exclusion, which applies to "you," *i.e.*, a "named insured."

138 S.W.3d 197, 200 (Tenn. Ct. App. 2003)). To succeed on a laches defense, one must establish "inexcusable, negligent, or unreasonable delay on the party asserting the claim." *Gleason v. Gleason*, 164 S.W.3d 588, 592 (Tenn. Ct. App. 2004) (citing *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995)). Where delay in filing suit can be explained or justified, courts are reluctant to apply laches. *Shell v. Law*, 935 S.W.2d 402, 410 (Tenn. Ct. App. 1996). However, delay alone is insufficient. Rather, the "determinative test" is whether the party has been prejudiced by the delay. *Grand Valley Lakes Prop. Owners Ass'n v. Burrow*, 376 S.W.3d 66, 83–84. (Tenn. Ct. App. 2011) (citation omitted); *Ferguson Harbour, Inc. v. Flash Mkt., Inc.*, 124 S.W.3d 541, 551 (Tenn. Ct. App. 2003) (citation omitted). "Prejudice includes the loss of evidence, expenditure of money, change of value, or a change of a party's right." *Archer*, 907 S.W.2d at 416 (citing *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990)); *see also Brown v. Ogle*, 46 S.W.3d 721, 727 (Tenn. Ct. App. 2000) (quoting *Evans v. Steele*, 145 S.W. 162, 165 (Tenn. 1912)) (noting the doctrine of laches applies "only in such cases where the loss of evidence, death of witnesses or parties, and failure of memory resulting in the obscuration of facts to the prejudice of the defendant, render uncertain the ascertainment of truth, and make it impossible for the court to pronounce a decree with confidence").

Despite appellants' declaration that Depositors' three-year delay "clearly shows a lack of diligence," R. at 24, Appellant Br. 16, there is no bright-line rule for how long a delay will tolerated. *See, e.g.*, *Gleason*, 164 S.W.3d at 592–93 (concluding laches did not bar a claim delayed by twelve years because there was no prejudice); *Ferguson*, 124 S.W.3d at 551–52 (concluding laches did not bar a claim delayed by six years because there was no prejudice); *Archer*, 907 S.W.2d at 416–18 (finding the five and one-half year delay in bringing a claim was

negligent, but concluding the delay did not result in prejudice). Depositors provides no justification for its delay. However, we need not contemplate whether the delay was "inexcusable, negligent, or unreasonable" because the Estate suffered no prejudice.

In the district court, Margaret Ryan responded to Depositors' motion for judgment on the pleadings and the Estate filed a motion adopting her response. The response does not allege any prejudice to the Estate, just to Margaret Ryan, and the Estate makes only conclusory allegations of prejudice in its answer. Therefore, any arguments as to prejudice suffered by the Estate are forfeited. *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006)).[6] As the district court noted, because the underlying declaratory judgment action concerns Depositors' legal obligations regarding the Estate, not with Margaret Ryan, the proper inquiry is whether the Estate, not Margaret Ryan, suffered prejudice. Thus, appellants' laches defense fails.

B.

Appellants declare that Depositors did not tell Margaret Ryan about the Exclusion until 2013, yet it copied her to the 2010 letter to her son, which did not mention that coverage was excluded for Margaret Ryan. The letter, they assert, created promissory estoppel, inducing Margaret Ryan to act to her detriment.

Though the parties use the terms interchangeably, Tennessee courts have recognized a distinction between estoppel and waiver. *See Kentucky Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 500–01 (Tenn. Ct. App. 1999). Waiver is an intentional or voluntary relinquishment of a known right. *Chattem, Inc. v. Provident Life & Accident Ins. Co.*, 676 S.W.2d 953, 955 (Tenn. 1984);

---

[6] To the extent the Estate alleges it suffered prejudice because of expenses incurred in conducting the state court litigation, this argument fails. Depositors provided legal representation to the Estate in the state court proceedings, and regardless of the delay, Margaret Ryan was precluded from coverage under the Policy. The Estate points to no facts that would "render uncertain the ascertainment of truth," *see Brown*, 46 S.W.3d at 727, so it was not prejudiced.

*Gardner*, 6 S.W.3d at 500. However, in Tennessee, this definition has been held to apply only "to a waiver of the right to enforce a provision in a contract," (a "procedural or technical condition"), but "not to the waiver of a right acquired under the contract in the agreed exchange" (a "substantive right"). *GuestHouse Int'l, LLC v. Shoney's N.A. Corp.*, 330 S.W.3d 166, 201–03 (Tenn. Ct. App. 2010). The doctrine applies defensively as an excuse for nonperformance of contractual duties, but not offensively to establish forfeiture of the opposing party's contractual rights. *Id.* at 201, 203–204; *see also Cincinnati Ins. Co. v. Banks*, 610 F. App'x 453, 459 (6th Cir. 2015).

Here, appellants are not using waiver as an excuse for nonperformance, but rather to establish that Depositors forfeited its rights to enforce the Exclusion. Thus, under Tennessee law the doctrine of waiver is not applicable to this case. *See GuestHouse*, 330 S.W.3d at 203.[7]

To succeed on the defense of equitable estoppel, appellants must prove the following with respect to Depositors:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; [and] (3) Knowledge, actual or constructive of the real facts.

*Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004) (citation omitted). With respect to themselves, they must establish: "[(4)] Lack of knowledge and of the means of

---

[7] Even if the doctrine did apply here, appellants fail to point to any "unequivocal and decisive act of [Depositors] showing a purpose to forgo the right or benefit which is waived." *Guesthouse*, 330 S.W.3d at 202 (citation omitted). They merely argue that the 2010 letter advising Andrew Ryan he had one year to sue and the fact that Depositors did not tell Margaret Ryan for three years that there was no coverage constitutes waiver. These acts are far from an unequivocal relinquishment of a right, particularly because the 2010 letter does not even reference Margaret Ryan's claim. Furthermore, there may be no claim for waiver where the policy's terms state it can only be waived by the company. *Builders Mut. Ins. Co. v. Pickens*, No. 3:13-CV-00022(WOB-HBG), 2013 WL 3788225, at *3 (E.D. Tenn. July 18, 2013) (citing *Finchum v. Davenport,* No. M2007-00559-COA-R3-CV, 2008 WL 2019408, at *7–8 (Tenn. Ct. App. May 9, 2008); *Reed v. Nat'l Found. Life Ins. Co.*, No. 03A01-9603-CV-00081, 1996 WL 718467, at *3–4 (Tenn. Ct. App. Dec. 16, 1996)). Thus, the Policy's declaration that "[i]ts terms may not be changed *or waived* except by an endorsement issued by us," Insurance Policy 37, is another ground upon which to reject appellants' waiver defense.

knowledge of the truth as to the facts in question; [(5)] Reliance upon the conduct of the party estopped; and [(6)] Action based thereon of such a character as to change [their] position prejudicially." *Id.* (citation omitted). Tennessee law does not favor the doctrine of equitable estoppel. *Burks v. Elevation Outdoor Adver.*, 220 S.W.3d 478, 490 (Tenn. Ct. App. 2006). While either negligent silence or silence when one has a duty to speak may support a claim for equitable estoppel, there will be no estoppel "where the facts are known to both parties, or both have the same means of ascertaining the truth." *Id.* at 491 (quoting *Lusk v. Consol. Aluminum Corp.*, 655 S.W.2d 917, 920 (Tenn. 1983); *Crabtree v. Bank*, 67 S.W. 797, 799–800 (Tenn. 1902)).

As discussed in the preceding section, the relevant inquiry is whether misrepresentations were communicated to the Estate, not to Margaret Ryan.[8]  Neither the response to Depositors' motion for judgment on the pleadings, nor appellants' brief on appeal alleged any affirmative misrepresentation was made to the Estate.  The Estate alleges only that it was not notified until 2013 that coverage was unavailable for Margaret Ryan.  Though an estoppel defense may be predicated upon the opposing party's silence, the Estate had access to the Policy.  Despite appellants' assertion that to understand the Policy, one would have to read it "in the painstaking level of detail and comprehension beyond that of the ordinary consumer," R. at 24, Appellant Br. 18, as discussed, the provisions at issue, despite being separated by scores of pages, are quite simple.  *See Omaha*, 866 S.W.2d at 541 (describing the language in nearly identical policy provisions as the "'easy reading' type").  Because the Estate had "the same means of ascertaining

---

[8]  Even if the inquiry were whether misrepresentations were made to Margaret Ryan, the estoppel defense would fail.  The 2010 letter which appellants allege induced her to litigate did nothing of the sort.  Though she was copied on the letter, neither she nor her injuries were referenced.  The letter did not make any false statements or imply that Margaret Ryan was entitled to coverage, so the first element is not met.  She had means to ascertain the truth because she had access to the Policy, so the fourth element is not met.  Finally, the sixth element is not met because she suffered no prejudice from any alleged misrepresentations because, as discussed in the preceding section, whether Depositors provides coverage for her injuries does not affect her recovery against the Estate.

the truth" as Depositors, the estoppel defense cannot stand. *See Burks*, 220 S.W.3d at 491 (citation omitted).

C.

"[A]n insurance policy is a contract of adhesion drafted by the insurer." *Alcazar v. Hayes*, 982 S.W.2d 845, 851 (Tenn. 1998) (quoting *Bill Brown Constr. v. Glens Falls Ins.*, 818 S.W.2d 1, 12 (Tenn. 1991)). However, such a contract is not *per se* invalid. *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 747 (Tenn. 2015). Rather, the enforceability of a contract of adhesion is contingent upon whether its terms are "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* (quoting *Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004)); *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (citation omitted). Adhesion contracts that oppress the weaker party or limit the obligations and liabilities of the stronger party are not enforced. *Berent*, 466 S.W.3d at 747 (citing *Buraczynski*, 919 S.W.2d at 320).

Tennessee courts have repeatedly held that family member exclusions, such as the Exclusion here, are enforceable. *Purkey*, 173 S.W.3d at 704–05 (citing *Dockins*, 764 S.W.2d at 530) ("This Court has twice held that household and family exclusion clauses in automobile insurance contracts are valid and enforceable."); *Holt*, 486 S.W.2d at 735); *Setters*, 937 S.W.2d at 952–53 (noting Tennessee law has consistently held family member exclusions are valid, and validating a provision excluding from coverage "bodily injury to you or any 'family member'").

Appellants' argument seems to be that because of the alleged structural ambiguity in the Policy, it is beyond the reasonable expectations of an ordinary consumer. However, as discussed above, there is no such ambiguity. Further, nearly identical provisions have consistently been upheld in Tennessee. Hence, the Policy is enforceable.

VI.

For the aforementioned reasons, we affirm the district court's judgment.